UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

OSCAR THAGARD, No. 04-B-0425,

Petitioner,

-v-

07-CV-6254(MAT)
**ORDER**

SUSAN CONNELL, Superintendent,
Oneida Correctional Facility,

Respondent.

## I. Introduction

*Pro se* petitioner, Oscar Thagard ("petitioner"), challenges his conviction in Erie County Court of Robbery in the Second Degree (N.Y. Penal Law § 160.10(2)(a)) following a jury trial before Judge Michael D'Amico on January 30, 2004.

## II. Factual Background and Procedural History

Petitioner's conviction arises out of an incident that occurred in the evening hours of January 2, 2003, as Tammy Aikin ("Aikin" or "the victim") was walking from an Elmwood Avenue grocery store to her home on Hodge Street in the City of Buffalo. Aiken was crossing the street onto Oakland Place, when petitioner came out from behind a bush and attempted to grab her purse. After a brief struggle, during which Aikin had the opportunity to examine her attacker's face, petitioner ran off with the victim's change purse and identification. Aikin recognized the man's face and clothing from an earlier encounter at the front entrance of the grocery store.

Gordon Anderson, who lived on Oakland Place, heard Aikin's screams and went outside. He observed a black male running fast toward Bryant Street. He then approached Aikin to assist her in gathering her belongings and walked her home. Once Aikin arrived back at her apartment, she called 911. As a result of the altercation, Aikin sustained injury to her shoulder and could not work for two months. Trial Tr. 53-54,57, 59-60, 64, 68-69, 82-89, 127, 155-58, 177-78.

Buffalo Police detectives were eventually able to identify petitioner as a possible suspect by working with security personnel at the grocery store, where the petitioner had been seen from a security camera loitering at the front entrance. Aikin then identified petitioner from a photo array. Trial Tr. 200-204, 222-e. After a Wade[1] hearing, the county court denied petitioner's motion challenging the propriety of the identification procedure. Hr'g Tr. 17-19. During the trial, the court allowed the prosecution to introduce evidence of the victim's identification of the petitioner from a photo array after finding that defense counsel had opened the door to the testimony. Trial Tr. 141-43. Petitioner did not testify at trial.

[1] United States v. Wade, 388 U.S. 218 (1967) (due process clause precludes states from obtaining evidence through unduly suggestive identification procedures)

Petitioner was convicted of second-degree robbery, and was subsequently sentenced as a second felony offender to a determinate term of imprisonment of eight years. Sentencing Tr. at 7.

Through counsel, petitioner submitted a brief to the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. People v. Thagard, 28 A.D.3d 1097 (4th Dept.), lv. denied, 7 N.Y.3d 795 (2006).

Petitioner then filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that: (1) his trial counsel was constitutionally ineffective; (2) he was deprived of a fair trial and due process; and (3) that the sentence is harsh and excessive. (Dkt. #1). For the reasons that follow, I find that petitioner is not entitled to habeas relief, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence

presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

### 2. Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice," i.e., that the petitioner is actually innocent. Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the

merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

**B. Merits of the Petition**

**1. Ineffective Assistance of Trial Counsel**

Petitioner claims, as he did on direct appeal, that his trial counsel was constitutionally ineffective for "opening the door" to testimony regarding the victim's prior photographic identification of petitioner.[2] Specifically, petitioner claims there was no strategic justification for trial counsel's decision since the defense hinged on mistaken identification. See Pet., Ground One. On direct appeal, the Appellate Division held that petitioner received "meaningful representation." People v. Thagard, 28 A.D.3d 1097, 1098 (4th Dept. 2006).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is

[2] See People v. Melendez, 55 N.Y.2d 455 (1982) (Where opposing party "opens the door" on cross-examination to matters not touched upon during direct examination, the party has right on redirect to explain, clarify and fully elicit questions only partially examined on cross-examination.)

demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

At trial, the victim had expressed absolute certainty that petitioner was her attacker. In light of the significant amount of time she had to observe petitioner (approximately three minutes), and the fact that the lighting conditions were good at the time of the robbery, trial counsel's decision to open the door to testimony regarding the photographic identification was carefully calculated. Indeed, trial counsel sought to convince the jury that the prior identification was tainted as the victim was told by someone investigating the case that petitioner was the perpetrator. Contrary to petitioner's assertion, trial counsel made an attempt to advance the best possible defense, which was clearly within the realm of reasonable trial strategy. See Trial Tr. 61, 141-42, 216-17. Here, petitioner has failed to demonstrate that his counsel's

conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

Accordingly, the Appellate Division did not render a decision that was contrary to, or an unreasonable application of Strickland v. Washington.

### 2. Fair Trial and Due Process Claims

#### a. Improper Evidentiary Rulings

Petitioner next avers that the trial court erred in allowing evidence of uncharged crimes and evidence of flight at trial. Pet., Ground One. The Appellate Division rejected petitioner's claims as unpreserved, pursuant to N.Y. Crim. Proc. Law § 470.05(2), which requires defense counsel to contemporaneously object to any alleged error during a trial. The Appellate Division alternatively ruled that petitioner's contentions lacked merit. Thagard, 28 A.D.3d at 1097.

New York's "contemporaneous objection" rule is recognized as an independent and adequate state law ground for the disposition of claims. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (holding that a violation of New York's contemporaneous objection rule is an adequate and independent state ground); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999); Day v. Taylor, 459 F.Supp.2d. 252, 257 (S.D.N.Y. 2006) (citing Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997)). Because the Appellate Division relied on a state

procedural rule to reject petitioner's evidentiary claims, the claims are precluded from habeas review pursuant to the adequate and independent state ground doctrine, notwithstanding the appellate court's alternative ruling on the merits. See Velasquez 898 F.2d at 9.

To overcome the procedural default, petitioner must either show cause for the default and resulting prejudice, or demonstrate that the failure to consider the claims in a habeas corpus proceeding will result in a fundamental miscarriage of justice. Petitioner has alleged neither cause and prejudice nor that he is actually innocent of the crimes for which he has been convicted. As such, petitioner's evidentiary claims are precluded from habeas review.

**b. Failure to Substitute Counsel**

Petitioner contends that the trial court's failure to address his request for substitution of counsel deprived him of a fair trial. Pet., Ground One. The Appellate Division concluded that reversal was not required because petitioner's "conclusory assertions in support of that request did not suggest a serious possibility of good cause for substitution." Thagard, 28 A.D.3d at 1097 (internal quotation omitted). According to petitioner's brief on appeal, petitioner wrote the county court one month prior to trial seeking to have counsel removed from representing him, stating that his attorney had "not diligently pursued or

investigated" an alibi that he was in a halfway house during the commission of the robbery. See Appellate Br. at 38. There is no indication that the trial court addressed this matter.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. However, "the right to choose one's own counsel is not absolute." United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) (citations omitted). Rather, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." Id. (citation omitted). "Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel." United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997).

Whether or not to permit substitution of counsel is within the discretion of the trial judge and turns on the facts of the case. McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981). It is not sufficient for a defendant simply to request a new lawyer. "[A] defendant seeking substitution of assigned counsel . . . must afford the court with legitimate reasons for the lack of confidence." McKee, 649 F.2d at 932. As the trial date approaches, the interest in avoiding delay and inconvenience becomes stronger, and the defendant is required to make a showing of "good cause" in

order to warrant substitution. McKee, 649 F.2d at 932; see also United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997) ("On the eve of trial, just as during trial, a defendant can only substitute new counsel when unusual circumstances are found to exist, such as a complete breakdown of communication or an irreconcilable conflict.") (citing United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972)). Petitioner must therefore demonstrate good cause for the substitution of assigned counsel.

Here, the record reflects that, after his initial letter to the trial court, petitioner never indicated that he was dissatisfied with his attorney's representation. Nor is there anything in the record to suggest a possibility of a conflict or a breakdown in communication between petitioner and his attorney. Petitioner's submissions also fail to substantiate his alleged alibi that may have provided a basis for his request to substitute counsel a month before trial. I further note that the record indicates that petitioner's defense counsel skillfully and zealously represented petitioner, pursuing the most viable defense under the circumstances. His unsupported assertion that his attorney failed to investigate his case cannot constitute "good cause" for the substitution of counsel. See Peterson v. Bennett, No.01-CV-920(NG), 2007 WL 1592600 at *5 (E.D.N.Y. July 18, 2002) (Petitioner's conclusory allegation of a conflict of interest was not sufficient to establish good cause for substitution of counsel).

Although the trial court should inquire the reasons for the dissatisfaction when a defendant voices a "seemingly substantial complaint about counsel," the petitioner was not harmed by the trial court's failure to do so. McKee, F.2d at 933 ("Where the failure to inquire causes the defendant no harm, that procedural irregularity cannot of itself be a basis for granting the writ."); accord, e.g., United States v. John Doe No. 1, 272 F.3d 116, 123 (2d Cir 2001) ("[I]f the reasons proffered are insubstantial and the defendant receives competent representation from counsel, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error.") see also Nelson v. Smith, No. 9:04-CV-564 (LEK/RFT) 2008 WL 2357098 at *4-5 (N.D.N.Y. June 4, 2008).

For the foregoing reasons, the Appellate Division did not contravene federal law in rejecting petitioner's claim that the trial court erred in failing to address petitioner's request to substitute counsel, and this claim is dismissed.

**c. Improper Comments by Trial Court**

Petitioner contends that the trial court exhibited "bad taste" when it questioned a potential juror during jury selection. Petitioner specifically argues that comments made by the trial court "invit[ed] a juror to contemplate the possibility that Petitioner could be associated with criminal activity in the past." Pet., Ground One. The Appellate Division concluded that petitioner

was not denied a fair trial as a result of those remarks. Thagard, 28 A.D.3d at 1097.

In pertinent part, the jury selection transcript reads:

> Prospective Juror: [In response to question 16-A], my house in Florida, when I was living in Florida at the time[,] it was broken into . . . .
>
> The Court: How long ago was that incident?
>
> Prospective Juror: Probably about 9, 10 years ago.
>
> The Court: It wasn't Mr. Thagard, right?
>
> Prospective Juror: No.
>
> The Court: You are not going to hold him responsible for that crime, right?
>
> Prospective Juror: No.
>
> The Court: I take it it has no affect on you here?
>
> Prospective Juror: No, nothing was taken. They think it was a kid in the neighborhood.

Jury Selection Tr. 142-43.

The Fifth and Fourteenth Amendments require that all criminal trials must be conducted within the bounds of fundamental fairness. Taylor v. Hayes, 418 U.S. 488, 501-02 (1974). There is "no doubt," however, that "prejudicial intervention by a trial judge could so fundamentally impair the fairness of a criminal trial as to violate the Due Process Clause." Daye v. Att'y General, 712 F.2d 1566, 1570 (2d Cir. 1983). With respect to the conduct of a state trial judge, federal review is limited to "due process and not the broad

exercise of supervisory power that we would possess in regard to our own trial court." Garcia v. Warden, Dannemora Corr. Facility, 795 F.2d 5, 7-8 (2d Cir. 1986) (quoting DeChristoforo v. Donnelly, 473 F.2d 1236, 1238 (1st Cir. 1973)). "'A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent to be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits.'" Johnson v. Scully, 727 F.2d 222, 226 (2d Cir. 1984) (quoting Daye, 712 F.2d at 1572). A mere showing that the judge's remarks were "undesirable" is not sufficient. Daye, 712 F.2d at 1572. Moreover, statements that "can be described as caustic and sometimes sarcastic" have been held not to deprive a petitioner of a fair trial. Gayle v. Scully, 779 F.2d 802, 813 (2d Cir. 1985). Rather, the question is "whether the totality of events which occurred during the entire trial rendered the trial 'not fair.'" Gayle, 779 F.2d at 813.

I find that the trial court's comments do not "exceed constitutional limits". Johnson, 727 F.2d at 226. Rather, in context, the preceding dialogue can more appropriately be read as highlighting the presumption of petitioner's innocence and emphasizing that the juror must be free from bias and partiality, as is fundamental to the constitutional precept of a fair trial. The county court also instructed the jury that the petitioner was presumed to be innocent, and the jury is presumed to have followed

that instruction. United States v. Colombo, 909 F.2d 711, 715 (2d Cir. 1990). Thus, any questionable remarks made by the trial judge were cured by his instruction to the jury. Bien v. Smith, 546 F.Supp.2d 26, 50 (E.D.N.Y. 2008). The Appellate Division's decision was therefore not contrary to or an unreasonable application of clearly established Supreme Court precedent.

**2. Harsh and Excessive Sentence**

Finally, petitioner argues that the sentence imposed on him by the trial court is harsh and excessive. Petition, Ground Two.

A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). Moreover, a challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord, Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

Here, petitioner was sentenced as a second felony offender to a determinate prison term of eight years with five years of post-release supervision, which falls well below the maximum allowable sentence of fifteen years as prescribed by the Penal Law. See N.Y. Penal Law § 70.06. Petitioner has therefore not set forth a ground on which habeas relief may be granted, and this claim is dismissed.

**IV. Conclusion**

For the reasons stated above, Oscar Thagard's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated: March 17, 2010
Rochester, New York